J-S06003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: B.G.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.M. | No. 1477 MDA 2015 |

Appeal from the Order entered August 5, 2015
in the Court of Common Pleas of Lackawanna County
Orphans' Court at No(s): A-9-2015

BEFORE:  PANELLA, J., MUNDY, J., and STEVENS, P.J.E.*

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 04, 2016**

T.M. ("Father") appeals from the Order entered on August 5, 2015, in the Court of Common Pleas of Lackawanna County, which involuntarily terminated his parental rights to his minor daughter, B.G.M. ("Child"), born in April 2013. We affirm.

The court summarized the relevant facts and procedural history as follows. Child was born in Lackawanna County to Father and D.S. ("Mother").[1] Following Child's birth, Child's maternal aunt, ("Maternal Aunt"), and Child's biological maternal uncle, ("Maternal Uncle"), maintained primary physical custody of Child since April 20, 2013. Father maintained partial

---

*Former Justice specially assigned to the Superior Court.

[1] Mother voluntarily relinquished her rights to Child.

physical custody of Child during the first year of Child's life, until April 17, 2014, at which time his visits were suspended by the court.

The petition to terminate Father's parental rights was filed by Maternal Aunt and Maternal Uncle on January 23, 2015. Father requested the appointment of counsel by the court to assist him in the termination proceedings. The court appointed counsel. A guardian *ad litem* had already been assigned to Child at an earlier proceeding.

The court held a hearing on July 2, 2015. During the hearing, the court heard the testimony of Katrina Roughsedge, a special needs instructor for Early Intervention through the United Cerebral Palsy of Northeastern Pennsylvania; Jeane Decker, an outpatient therapist through Aaron Center; Corinne Thiel, the Guardian *ad litem*; Maternal Aunt; Maternal Uncle; and Father. Following the hearing, the court entered an Order granting Maternal Aunt's and Maternal Uncle's petition for the involuntary termination of Father's parental rights. Father timely appealed.

Father raises three issues on appeal.

> 1. Did the trial [c]ourt err in concluding that petitioners established, by clear and convincing evidence, the elements required to involuntarily terminate respondent's parental rights, as the evidence presented by petitioners clearly and convincingly does not establish the required elements for involuntarily termination pursuant to 23 Pa. C.S.A. § 2511(a)(1)?
>
> 2. Did the trial [c]ourt err in failing to consider, and to give significant weight to, the likelihood of severe detriment to the minor child if minor child were not re-integrated with her natural father, biological two brothers

- 2 -

and one sister as the testimony presented by respondent at trial clearly suggests?

3. Did the trial court err in based on [sic] that the decision is not supported by its own findings of fact, by the facts of record, or by Pennsylvania law such that the trial [c]ourt did not find, for example, that respondent has custody of minor child's three older biological siblings?

Father's Brief at 4.

We review the appeal from the termination of parental rights in accordance with the following standard.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and

- 3 -

judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. **In re Adoption of Atencio**, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

**In re Adoption of S.P.**, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **See In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained that

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

**Id**. (quoting **In re J.L.C.**, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This court may affirm the court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, the court terminated Father's parental rights under section 2511(a)(1) and (b), which provide as follows.

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

- 4 -

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

We have explained this Court's review of a challenge to the sufficiency of the evidence supporting the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows.

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

\* \* \*

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

[T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (citation omitted). *See also In re Adoption of C.L.G.*, 956 A.2d 999, 1006 (Pa. Super 2008) (*en banc*).

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child *and* refusal or failure to perform parental duties, as *or* joins the two portions of the statute. *See In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998).

Further, regarding the definition of "parental duties,"

[t]here is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order

- 6 -

> to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted).

Father testified as to how he had loved, sheltered, and cared for Child. However, other testimony showed that he had not cared for Child for any duration of time, except for the month that Mother had resided with the Maternal Aunt and Maternal Uncle.

Father's testimony illustrated the inconsistent, sporadic visits that he had with Child. Father saw Child for occasional, brief visits in 2013 and in the very early part of 2014. Father has not seen Child since April 2014. *See* N.T., 7/2/15, at 8, 63, 103-104, 117-199, 122-124. Father's reasons for not parenting, supporting, or visiting Child were transportation problems, money and employment issues, and the child care responsibilities for his other children, some of whom reside with him. Father also has a criminal record of numerous offenses. *See id*., at Exhibit P-6.

At the hearing, Father maintained that, if he were given custody of Child, he would be able to meet his parenting responsibilities. *See id*., at 122-124. However, the guardian *ad litem* testified that Father has been and continues to be non-compliant with his obligations to the court and to Child.

*See id*., at 25-30. In addition, the Maternal Aunt and Maternal Uncle testified that Father has been largely absent for most of Child's life. They have maintained physical custody of Child since she was just two weeks old and have exclusively carried out all parental roles and responsibilities for Child since that time. *See* N.T., 7/2/2015, at 121-122. At the hearing, Father did not dispute that he had not seen Child for more than one year and acknowledged that he had not been in contact with the Maternal Aunt and Maternal Uncle to inquire about Child's well-being for more than a year prior to the filing of the involuntarily termination petition.

The court found that Father's own actions and inactions are indicative of his long-standing refusal to perform parental duties for Child, which evidenced a settled purpose of relinquishing his parental claim to Child. *See* N.T., 7/2/2015, at 122-124. We agree and find that competent evidence amply supports the involuntary termination of Father's parental rights to Child pursuant to § 2511(a)(1).

Next, we consider section 2511(b).

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the

- 8 -

effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Child has no bond with Father. The involuntary termination of Father's parental rights will have no effect on Child. The court found that the involuntary termination of Father's parental rights would best meet the needs of Child and permit the Child to achieve the stability that she deserves.

The court also had before it competent evidence to support a finding that Child has a strong emotional bond with her foster parents, with whom she has been living for the last two years and who take care of all of her needs. At the hearing, Ms. Decker, a social worker, opined that Child is attached to Maternal Aunt and Maternal Uncle, and there is a natural bond between them. She also opined that Child is well adjusted with Maternal Aunt and Maternal Uncle, and is well cared for and loved by them. Thus, the court found that there is no evidence that Child would be adversely affected if her relationship with Father were severed.

The competent evidence in the record shows that Father failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting . . . ." *In re K.K.R.S.*, 958 A.2d 529, 534 (Pa. Super. 2008) (citation omitted). Father did not put himself in a position to assume daily parenting responsibilities so that could develop a real bond with Child. *See In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super.

2003). In addition, it is by Father's own actions or inactions that have resulted in Child being kept from her biological siblings and the establishment of bonding relationships.

A parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125.

We find that there was competent evidence to support the court's decision that involuntary termination of Father's parental rights best serves Child's developmental, physical, and emotional needs and welfare. Thus, we discern no abuse of discretion or error of law on the part of the court pursuant to section 2511(b).

Accordingly, we affirm the court's order terminating Father's parental rights to Child pursuant to section 2511(a)(1) and (b).

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2016

- 10 -